**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SHAMON TYRELL SMITH,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:04-CV-0682-Y** |
| | § | |
| **DOUGLAS DRETKE, DIRECTOR,** | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE, CORRECTIONAL INSTITUTIONS** | § | |
| **DIVISION,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The findings, conclusions, and recommendation of the United States Magistrate Judge are as follows:

## I.  FINDINGS AND CONCLUSIONS

### A.  NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B.  PARTIES

Petitioner Shamon Tyrell Smith, TDCJ-ID #1069400, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Abileen, Texas.

Respondent Douglas Dretke is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

### C.  FACTUAL AND PROCEDURAL HISTORY

On September 5, 2000, Smith was charged in a multicount indictment with attempted capital

murder and aggravated assault with a deadly weapon in the underlying state criminal case.  (Clerk's R. at 3-4.)  The indictment also included an enhancement notice alleging a prior 1996 felony conviction for assault on a public servant.  (*Id.*)  Before trial, the state waived all counts except for one count of aggravated assault with a deadly weapon.  (*Id.*)  Smith's trial commenced on October 2, 2001.  The evidence established that, on June 17, 2000, two men confronted Christopher Bryant in the parking lot of a Fina store in Fort Worth involving a drug transaction, and an altercation ensued.  (4Reporter's R. at 57-64, 77-89, 95-125; 5Reporter's R. at 26-80, 116-17, 123, 159-60.)  Bryant eventually ran across the street, and one of the men gave chase on foot.  The other got into a car driven by Smith.  Smith chased Bryant with the car and struck him.  Bryant fell, and the men kicked and hit Bryant.  One of the men then removed $300 or $400 from Bryant's wallet, and Smith drove the three away.  Law enforcement contacted Narkeshia White, the owner of the car, and she informed them that Smith had borrowed the car on the morning in question and had admitted to her that he "swerved into a man" while in possession of the car.  After his arrest, Smith gave two written statements to Detective Boetcher.  In the second statement, he admitted that he cut Bryant off with the car, slapped Bryant, and received some of the money taken from Bryant to buy beer.  Bryant suffered serious injuries as a result of the attack and was hospitalized for several months.  Smith did not testify at trial.  Based on the evidence, the jury found Smith guilty of the charged offense, and the trial court assessed his punishment at fifteen years' confinement.  (Clerk's R. at 139.)

Smith appealed his conviction, but the Second District Court of Appeals affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused Smith's petition for discretionary review.  *Smith v. Texas*, No. 2-01-424-CR, slip op. (Tex. App.–Fort Worth Dec. 5, 2002); *Smith v. Texas*, PDR No. 214-03.  Smith did not seek writ of certiorari.  (Petition at 3.)  He

filed a state application for writ of habeas corpus raising the claims presented herein, which was denied by the Court of Criminal Appeals without written order on the findings of the trial court.  *Ex parte Smith*, No. 58,946-01, at cover.  Smith filed this federal petition for writ of habeas corpus on August 29, 2004.[1]

## D.  ISSUES

Smith states the following grounds to set aside his conviction:

"(I)       Coerced statement;
(II)      Due process–denial of counsel of choice;
(III)     Conflict of interest;
(IV)     Ineffective assistance of counsel;
(V)      Prosecution misconduct;
(VI)     Prejudicial trial;
(VII)    Judicial default;
(VIII)   No evidence;
(IX)     Ineffective assistance appeal counsel;
(X)      Illegal search and seizure/unlawful arrest;
(XI)     Invalid or defective indictment;
(XII)    Speedy trial violation; and
(VIII)   Denied report of transcribed proceedings."  (Pet'r Memorandum at 5.)

Then he proceeds to set forth in sequential order logical and illogical arguments based upon current and archaic authorities.  The following is an attempt to address the primary points and arguments he appears to make.  These points shall be analyzed under eight sections:  Unlawful Arrest, Voluntariness of Incriminating Statement, Validity of the Indictment, Lack of Speedy Trial, Errors Relating to Counsel, Errors Relating to Prosecution and Judge, Lack of Evidence to Support the Conviction, and Denial of Court Records.

---

[1]A pro se habeas petition is deemed filed when the petition is delivered to prison authorities for mailing.  *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998).

E.  RULE 5 STATEMENT

Dretke believes that Smith has sufficiently exhausted his state remedies with regard to the claims presented as required by 28 U.S.C. § 2254(b)(1), except for grounds VI, VIII, and XII enumerated above.  (Resp't Answer at 5.)   As to those grounds, Dretke contends the claims are unexhausted and procedurally barred.

F.  PROCEDURAL DEFAULT

Smith raised his claims under grounds VI, VIII, and XII in his postconviction state application for writ of habeas corpus.  (State Habeas R. at 7-10.)  Under ground VI, Smith contends that the preponderance of erroneously admitted evidence prejudiced his trial.  (*Id.* at 52-54.)  The state habeas court found that there was no evidence to support Smith's claim that his trial was prejudiced, and it recommended denial of the claim.  (*Id.* at 16.)  Under ground VIII, Smith contends there was no evidence so show that he used a deadly weapon, that he caused serious bodily injury to Bryant, or that he was guilty as a party.  (*Id.* at 55-56.)  The state court found that, although a sufficiency-of-the-evidence claim is waived if not raised on appeal, a no-evidence claim is cognizable on state habeas review.  (*Id.* at 19.)  The court concluded, however, that there was some evidence to support Smith's conviction for aggravated assault, and it recommended denial of the claim.  (*Id.* at 20.)  Finally, under ground XII, Smith contends that his right to a speedy trial was violated.  (*Id.* at 58.)  The state court found that a speedy trial claim is not cognizable on state habeas review, and it recommended denial of the claim on that basis.  (*Id.* at 21.)

The general rule is that a federal habeas court will not consider a claim that the last state court expressly and unambiguously rejected on the basis of an adequate and independent state procedural ground.  *See Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Johnson v. Puckett*,

176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  Dretke argues that Smith's failure to present grounds VI and VIII on direct appeal resulted in a procedural default of the claims barring federal habeas review.  (Resp't Answer at 11-12.)  The state courts, however, did not expressly rely on a state procedural rule for denial of those claims.

On the other hand, the state courts clearly relied on a procedural default to deny relief on Smith's speedy trial claim under ground XII.  This state procedural rule is an adequate state ground to support the state court's denial of habeas relief and is independent of federal law.  *See Coleman*, 501 U.S. at 729.  Smith contends the default of his speedy trial claim was the result of ineffective assistance of trial and appellate counsel, who failed to raise the issue at trial and on appeal.[2]  (Pet'r Reply at 4.)  Counsel's ineffectiveness in failing to properly preserve a claim for review in state court can excuse a procedural default, but only if that ineffectiveness itself constitutes an independent constitutional claim.  *See Murray v. Carrier*, 477 U.S. 478, 488-99 (1986).  Smith has not demonstrated that counsel was ineffective by failing to raise a speedy trial claim or that he would have prevailed had counsel raised the issue at trial or on appeal, *see* discussion *infra*.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been made, Smith's speedy trial claim under ground XII is procedurally barred from this court's review.

---

[2]A claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.  *Carrier*, 477 U.S. at 489; *Edwards*, 529 U.S. at 451-52.  It is noted that Smith did not argue ineffectiveness of trial counsel for failing to raise a speedy trial objection in his state habeas application.  He did, however, argue that appellate counsel was ineffective by failing to the raise the issue on direct appeal.  (State Habeas R. at 46-50, 56.)

G. LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas

corpus application without written opinion it is an adjudication on the merits, which is entitled to the presumption. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### H.  DISCUSSION OF THE ISSUES

#### 1.  Unlawful Arrest

Smith complains that, in violation of the Fourth Amendment, he was illegally arrested based on the hearsay statement of a witness.  (Petition at 7b; Pet'r Memorandum at 17.)  A federal court is generally barred from reviewing Fourth Amendment claims on habeas review.  *Stone v. Powell,* 428 U.S. 465, 494 (1976).  In *Stone*, the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Id.*  Under such circumstances, *Stone* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes. *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978).

Smith did not raise his Fourth Amendment claim on direct appeal, and, instead, raised it for the first time in his state habeas application.  The trial court found that, although a search issue will not be considered for the first time on state habeas review if the defendant had a fair opportunity to raise the matter on direct appeal, Smith had failed to prove he was arrested unlawfully.  (State Habeas R. at 20.)  Dretke argues that the claim should be barred by *Stone* because the state provided an opportunity for full and fair litigation of the claim.  (Resp't Answer at 27.)  Smith asserts that the claim was not raised on direct appeal due to ineffective assistance of counsel.  (Pet'r Answer at 7-8.)

Although *Stone*'s restriction on federal habeas review of Fourth Amendment claims may not extend to relevant ineffective-assistance-of-counsel claims, Smith has not demonstrated a meritorious Fourth Amendment claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). A copy of the arrest warrant has not been provided, thus it is impossible to determine the actual basis for the probable cause finding. Nevertheless, probable cause for an arrest warrant may be based on hearsay if the information is accepted by the affiant as true. *See United States v. Laury*, 985 F.2d 1293, 1312 (5th Cir. 1993); *Bennett v. City of Grand Prairie, Tx.*, 883 F.2d 400,405-10 (5th Cir. 1989).

### 2. Voluntariness of Incriminating Statement

Smith complains that the second written statement he gave after his arrest should not have been admitted into evidence because it was not voluntarily given. He asserts the statement was coerced because Detective Boetcher impliedly promised to use his influence to get the charges reduced. (Petition at 7; Pet'r Memorandum at 6-8.)

Smith was arrested on an attempted-capital-murder warrant several days following the offense. (2Reporter's R. at 30, 42.) After receiving *Miranda* warnings, Smith gave two written statements to Detective Boetcher, the second given within an hour after the first. (2Reporter's R. at 17-26; 5Reporter's R. at 145-61; 8Reporter's R, States Exhibits 18, 19, 20.) Smith filed a pretrial motion to suppress the statements, and a hearing was conducted. (Clerk's R. at 28-31.) Detective Boetcher testified that, because of some discrepancies between Smith's initial account of his activities and the facts of the case, he interviewed Smith a second time and obtained the second statement, in which Smith implicates himself in the assault on Bryant. (2Reporter's R. at 25, 34, 43.) He and Smith discussed the different elements of aggravated assault versus attempted capital

8

murder and he may have told Smith that the district attorney would be aware of any cooperation from him by reviewing the file but that it was the district attorney's decision on what charges would be filed.  (*Id.* at 19-20, 25-27, 38-40.)  He denied threatening, coercing, or promising Smith anything in return for giving his statements.  (*Id.* at 19-20.)

Smith, on the other hand, testified that he talked to the detective voluntarily because he felt his participation in the crime had been blown out of proportion and he wanted to clarify the extent of his participation.  (*Id.* at 43, 45, 50, 54.)  Smith asserted that, based on their discussion, he believed the detective had the power to get the charge reduced to aggravated assault if he admitted his involvement and that, but for the detective's representations, he probably would not have admitted any culpability.  (*Id.* at 46-48, 56.)

The trial court found that Smith knew and understood his rights when he gave the second statement and that the statement was voluntarily obtained under article 38.22 of the Texas Code of Criminal Procedure, and it denied the motion to suppress.  (*Id.* at 62.)  Similarly, the state appellate court considered the issue in the context of state statutory and case law.[3]  Under state law, for a promise to render a statement invalid for purposes of article 38.21 it must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that it would cause a defendant to speak untruthfully.  *See Henderson v. Texas*, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997); *Janecka v. Texas*, 937 S.W.2d 456, 466 (Tex. Crim. App. 1996).  The appellate court determined that Smith had failed to demonstrate that the detective positively and unequivocally

---

[3]Article 38.21 of the Texas Code of Criminal Procedure provides:  "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed."  TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005).  Article 38.22, in relevant part, sets forth the requirements for admissibility of a written statement by an accused.  *Id.* art. 38.22, § 2.

promised that he would use his influence to obtain a lesser charge against Smith in return for his statement. *Smith*, No. 2-01-424-CR, slip op. The Court of Criminal Appeals also considered and rejected the claim, which was raised in Smith's petition for discretionary review.

To the extent Smith's claim involves the state court's application of state statutory, case or constitutional law, his claim is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Alleged errors of state law do not constitute an independent basis for federal habeas relief. *Narvaiz*, 134 F.3d at 695. As a federal constitutional matter, the test for determining the voluntariness of a statement is to ask what effect the totality of the circumstances had upon the will of the defendant. *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991). Police threats or promises are treated as part of the totality of the circumstances. *E.g., Miller v. Fenton*, 796 F.2d 598, 608 (3rd Cir. 1986); *United States v. Shears*, 762 F.2d 397, 402 (4th Cir. 1985). Thus, the mere existence of a threat or promise in connection with a statement does not render the statement per se involuntary. *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997).

In this case, there is no evidence of a promise by the detective that the charge would be reduced in exchange for Smith's statement. At best, the evidence shows only that the detective's comments may have left that impression with Smith. This is not sufficient to rise to the level of inducement or coercion. *See Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002). Even if the detective's comments to Smith could be perceived as a promise, a statement is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials. *See United States v. Santiago*, ___ F.3d ___ , 2005 WL 1163424, at *7-8 (5th Cir. May 18, 2005); *United States v. Bye*, 919 F.2d 6, 9 (5th Cir. 1990).

### 3.  Validity of Indictment

Smith complains that the indictment was defective because it contained misjoined charges and because it alleged alternative means of committing the offense and using a deadly weapon–i.e., with an automobile, and/or his hand, and/or his foot.  (Clerk's R. at 3-4; Pet'r Memorandum at 17-18; Pet'r Reply at 9.)  According to Smith, the attempted capital murder and aggravated assault charges were misjoined in one indictment, in violation of the state's carving doctrine and double jeopardy, because the offenses required the same evidence to convict and were part of the same continuous transaction.  (Pet'r Memorandum at 17-18.)  *See Ex parte Cantrell*, 580 S.W.2d 369, 379 n.1 (Tex. Crim. App. [Panel Op.] 1979).

The state habeas court determined that Smith had failed to prove that the indictment was defective or invalid.  Specifically, it found that the state's carving doctrine was abandoned in Texas in 1982 and that the state is allowed to anticipate variances in the proof by pleading alternative manner and means in the conjunctive when proof of any one manner and mean swill support a guilty verdict.  (State Habeas R. at 21.)  The sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it is shown that the indictment is so defective that the convicting court had no jurisdiction.   *See Lockett v*. Anderson, 230 F.3d 695, 702 (5th Cir. 2000); *Alexander v. McCotter*, 775 F.2d 595, 598-99 (5th Cir. 1985).  Smith has not made such a showing.  Thus, where, as here, the state courts have addressed the validity of an indictment under state law, the federal court need not address that issue on habeas review.  (State Habeas R. at 20-21.)  *See McKay v. Collins*, 12 F.3d 66, 68-69 (5th Cir. 1994).

### 4.  Lack of Speedy Trial

Smith complains that his right to a speedy trial was violated.  The criteria for assessing a

speedy trial claim is set out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  Under *Barker*, a court must consider the following factors:  (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant.  *Id.*

Smith was arrested on June 23, 2000, and the indictment was filed on September 5, 2000.  (Clerk's R. at 3, 101; 5Reporter's R. at 143.)  His trial began approximately one year and one month later on October 2, 2001.  There is no reason evident from the record for the delay, although it does appear the case was set on the court's trial docket at least three times before October 2001.  Nor does it appear Smith specifically asserted his right to a speedy trial.  Smith asserts he was harmed as a result of the delay because it caused him worry and anxiety, requiring treatment with prescribed drugs for depression, and because a potential eyewitness at the scene was incarcerated at the time of trial on an unrelated offense.  (Pet'r Memorandum at 18.)  He provides no proof, however, of these assertions.  Thus, although the first factor may weigh slightly in his favor, Smith has not shown that the remaining factors weigh in his favor or that his defense was impaired as a result of the delay.  *See United States v. Serna-Villarreal*, 352 F.3d 225, 230-31 (5th Cir. 2003), *cert. denied*, 541 U.S. 981 2004).  Having weighed the *Barker* factors in this case, no speedy trial violation occurred.

### 5.  Errors Relating to Counsel

Smith complains that he was denied his right to counsel of choice and forced to go to trial with appointed counsel Lisa Mullen because the trial court would not grant a continuance to allow retained counsel time to investigate and prepare his case.  (Pet'r Memorandum at 8.)  The record reflects that, on the day before trial, Smith sought to retain an attorney.  (2Reporter' R. at 2-9.) Smith and his family talked with attorney Leon Haley, who agreed to represent Smith for a certain

fee if the trial judge would grant a continuance so he could prepare for trial.  (*Id.* at 2-9.)  The trial judge discussed the matter with the parties and with Haley, who had not yet been hired, and informed Smith that he would not grant a continuance on the eve of trial, even if Haley were to be hired.

The Sixth Amendment right to counsel in a criminal proceeding has long been construed to include a criminal defendant's qualified right to retain counsel of the defendant's own choosing. *See Newton v. Dretke*, 371 F.3d 250, 255-56 (5th Cir.), *cert. denied*, 125 S. Ct. 441 (2004); *United States v. Hughey*, 147 F.3d 423, 429 (5th Cir. 1998).  The right is not absolute.  *Id.*  Rather, what is required is that the defendant be given a fair or reasonable opportunity to obtain particular counsel. *See United States v. Paternostro*, 966 F.2d 907, 912 (5th Cir. 1992).  The freedom to have counsel of one's own choosing may not be used for purposes of delay.  *See United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980).  Last minute requests for substitution are disfavored.  *Id.*

The state habeas court entered relevant findings of fact on the issue.  (State Habeas R. at 15-16.)  The court found that there had been several pretrial hearings and Smith had waited until the day before trial to request new counsel without legitimate reasons for doing so.  The court further found that appointed counsel had months to prepare for trial and there was no showing that Haley had actually been retained or was prepared to try the case.  (2Reporter's R. at 3-8.)  Under these circumstances, Smith was not denied his Sixth Amendment right to counsel, and the trial court was justified in compelling Smith to proceed to trial with his appointed counsel.

Smith complains that he received ineffective assistance of trial and appellate counsel.  He

asserts trial counsel was ineffective due to a conflict of interest[4] and by failing to (1) conduct an adequate pretrial investigation, (2) present a reasonable defense, (3) object to prejudicial parts of the indictment, and (4) consult with him on important decisions. (Petition at 7-7a; Pet'r Memorandum at 9-11.) Under each of these claims, Smith asserts a multitude of alleged acts and omissions by counsel, the cumulative effect of which was to deny him a meaningful defense. He asserts appellate counsel was ineffective by failing to raise one or more of the claims presented herein on direct appeal. (Petition at 7b; Pet'r Memorandum at 17.)

A criminal defendant has a Sixth Amendment right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to

---

[4]Where there is an alleged conflict between an attorney's personal interest and her client's, as here, the claim is analyzed under the *Strickland* standard for ineffective assistance of counsel. *See Beets v. Scott*, 65 F.3d 1258, 1269-72 (5th Cir.1995).

eliminate the distorting effects of hindsight.  *Id.* at 689.

Without a hearing, the state habeas court found that Smith had provided no evidentiary basis for his ineffective assistance claims and that he had thus failed to prove counsel's performance was deficient under *Strickland* or to show that, but for the alleged acts of attorney misconduct, the result of the proceedings would have been different.  (State Habeas R. at 16-19.)  On those findings, the Court of Criminal Appeals rejected Smith's claims.  Federal habeas intervention is appropriate only if the state courts' decision was contrary to or involved an unreasonable application of *Strickland*, or if the state courts' decision is based on an unreasonable determination of the facts in light of the evidence before the state courts.  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Pondexter v. Dretke*, 346 F.3d 142, 145-46 (5th Cir. 2003), *cert. denied*, 522 U.S. 825 (2004); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).  The state courts' application of *Strickland* must be shown to be not only erroneous, but objectively unreasonable.  *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

Having independently considered each of Smith's ineffective assistance claims, it does not appear that the state courts' application of *Strickland*'s attorney-performance standard was objectively unreasonable.  Unsubstantiated allegations of ineffective assistance are insufficient to support an ineffective assistance claim.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (providing that, absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value).  Moreover, the right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance.  *See Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981); *Johnson v. Estelle*, 704 F.2d 232, 239 (5th Cir. 1983).  A review of the totality of the circumstances surrounding trial counsel's

15

representation reveals that she defended Smith vigorously and competently.  She filed numerous pretrial motions, including a motion to suppress his incriminating written statement, which was denied after an evidentiary hearing.  She appeared to have extensive knowledge regarding the facts and circumstances of the case.  She conducted voir dire, raised numerous relevant objections during trial, effectively cross-examined the state's witnesses, gave closing argument, and employed a defensive strategy to show Smith's written statement was involuntary and to minimize his participation, if any, in the offense.  Furthermore, even if Smith could demonstrate deficient performance on or more of his allegations, he has failed to show how his defense was prejudiced. Given the evidence bearing on Smith's guilt, no reason exists for thinking that the jury would have acquitted him had counsel's performance not been deficient in those respects.

Nor has Smith shown deficient performance on the part of appellate counsel and resulting prejudice.  In this context, to establish deficient performance, a petitioner must show that counsel unreasonably failed to discover and raise nonfrivolous issues on appeal.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  To establish prejudice, a petitioner must demonstrate that, but for counsel's omissions, he would have prevailed on appeal.  *Id.*  Smith contends appellate counsel was ineffective by failing to raise on direct appeal a sufficiency-of-the-evidence claim and grounds II, III, IV, VI, and XII enumerated above.  (Pet'r Memorandum at 17.)  Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit.  *Id.* at 288; *Evitts*, 469 U.S. at 394.  Instead, counsel is required to raise and brief only those issues which are believed by counsel, in the exercise of professional judgment, to have the best chance of success.  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

Smith has not shown that a sufficiency-of-the-evidence claim or one or more of the other

claims would have been meritorious, and, if so, that a reasonable probability exists that the appeal would have had a different outcome had appellate counsel addressed the issues. Smith's written statement combined with the witnesses' and victim's testimonies was sufficient evidence, when viewed in the light most favorable to the prosecution, to establish beyond a reasonable doubt that he committed aggravated assault with a deadly weapon based on his own conduct or as a party. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Furthermore, a state postconviction habeas corpus application, and not direct appeal, is generally the appropriate vehicle for bringing forth ineffective assistance claims. *See Robinson v. Texas*, 16 S.W.3d 808, 810-11 (Tex. Crim. App. 2000); *Thompson v. Texas*, 9 S.W.3d 808, 813-14 n.5-6 (Tex. Crim. App. 1999). Finally, Smith has not established that his right to a speedy trial was violated or that his trial was prejudiced as a result of the introduction of inadmissible evidence.

### 6.  Errors Relating to Prosecutor and Judge

Smith complains that the state engaged in prosecutorial misconduct and that the trial court erred in various ways, thereby rendering his trial fundamentally unfair. The state habeas court again found that Smith's claims lacked an evidentiary basis and recommended denial of the claims. (State Habeas R. at 16, 19.) As in state court, Smith provides no evidentiary basis for his claims in this federal action.

Smith contends the prosecution withheld a witness's statement that Smith's role in the offense was only to break up the altercation, Bryant's statement that he was not assaulted or threatened by the motor vehicle, medical records confirming that Bryant suffered serious bodily injuries, and information that Narkeshia White was on probation for theft at the time of trial. Federal due process requires the prosecution to disclose material, exculpatory information to an accused.

17

*Brady v. Maryland*, 373 U.S. 83, 87 (1963).  Such non-disclosure is violative of due process if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Smith cannot meet this burden.  He does not provide the name of the witness who he claims gave a statement nor does he provide the actual statement of the witness.  He does not identify where in the record Bryant stated that he was not assaulted or threatened by the car.  To the contrary, Bryant testified that he was scared when he saw the car and that the car chased him, jumped a curb, and hit his leg.  (5Reporter's R. at 37-41, 75, 79-80.)  He does not provide evidence that White was, in fact, on probation for theft at the time of his trial, and the record reflects that the state provided a copy of Bryant's medical records to the defense some six to eight months before trial.  (5Reporter's R. at 81.)  Thus, these claims are frivolous.

Smith contends the prosecution misjoined offenses in the indictment, elicited improper hearsay testimony about his co-defendant's statement through Detective Boetcher, presented a prejudicial bloody photo of Bryant, improperly used a paramedic to testify as an expert witness as to the life-threatening potential of Bryant's injuries, made a direct reference to his failure to testify, improperly asserted their personal beliefs regarding Smith's role in the offense, and appealed to the jury's emotions in closing argument.

His first claim, previously discussed, does not entitle Smith to relief.  As to the remaining claims, it is unclear what alleged hearsay testimony or co-defendant statement is in question.  Detective Boetcher testified that Kevin Bibbs, presumably Smith's co-defendant, was also arrested in connection with the offense and gave a statement, but there was no testimony as to what Bibbs's

18

statement contained.[5]  (5Reporter's R. at 161, 171-73.)  Nor is it apparent about which photograph

Smith complains.  There were eight photographs offered and admitted into evidence by the state.

(8Reporter's R., State's Exhibit 5.)  Under Texas law, photographs are admissible regardless of their

inflammatory nature if they are competent, material, and relevant, and unless they are offered solely

to inflame the minds of the jury.  *See, e.g., Reimer v. State*, 657 S.W.2d 894, 896 (Tex. App.–Corpus

Christi 1983, no writ).  Here, the photographs admitted into evidence served to illustrate the nature

and extent of Bryant's injuries and were thus properly admitted.  *See Woods v. Johnson*, 75 F.3d

1017, 1039 (5th Cir. 1996).  The testimony of the paramedic, Mark Hull, was also permissible.

Hull's testimony never exceeded the bounds of lay opinion testimony.  (5Reporter's R. at 99-108.)

*See* TEX. R. EVID. 701.  He testified regarding the life-threatening potential of Bryant's injuries

based only on his experience and what he rationally perceived, never proffering any ultimate

opinions which are reserved for expert witnesses.

Further, no direct references to Smith's failure to testify are found in the record.  Smith

contends the prosecutor *implied* in his opening remarks that one reason a defendant may not take

the stand is to hide his guilt.  Apparently, Smith is challenging the following remarks by the

prosecutor during voir dire:

> All right.  Is there anyone here who would - - let's say the State doesn't prove
> its case beyond a reasonable doubt, okay?  *You think he might be guilty but you have
> a reasonable doubt and you think to yourself, well, if I were not guilty I would take
> the stand and I would defend myself.  And the fact that the Defendant didn't take the
> stand pretty much means to me that he is guilty, you would then return a verdict of
> guilty*.  (3Reporter's R. at 46.)

Having reviewed the remarks in context, the remarks do not demonstrate any willful or

---

[5]The record indicates that the third participant in the offense was never arrested.

19

calculated effort on the part of the prosecution to deprive Smith of a fair and impartial trial, but rather an attempt to flush out potentially biased jurors.  Similarly, viewed in its entirety, the state's closing argument in which the prosecutor pointed out that not a single person showed up to support Bryant was not primarily an appeal to the jurors' emotions, but rather an attempt to underscore the fact that, although not the ideal complainant, Bryant deserved the full protection of the law. (6Reporter's R. 3-8)  Moreover, under Texas law, it is well-established that a prosecutor may argue his opinions concerning issues in the case so long as the opinions are based on the evidence in the record and do not constitute unsworn testimony.  *See McKay v. Texas*,  707 S.W.2d 23, 27 (Tex. Crim. App. 1985).

Smith complains that the trial court erred by refusing to postpone his trial so retained counsel could investigate and prepare the case, allowing the state to engage in the alleged misconduct noted above, failing to properly instruct the jury on mitigating circumstances and defensive theories, failing to give adequate notice of his trial date, and failing to grant his motion to suppress.  (Pet'r Memorandum at 15.)  The state habeas court found that Smith had failed to prove judicial misconduct and recommended denial of the claims.  (State Habeas R. at 19.)  The majority of these claims have already been addressed and are not revisited.

To the extent Smith asserts the trial court erred by failing to properly instruct the jury that the law requires proof that he intended the result of the offense, the assertion is false.  The record shows the trial court instructed the jury on this matter.  (Clerk's R. at 127.)  To the extent Smith asserts the trial court failed to give him adequate notice of his trial date, the record reflects Smith's case was set on the court's "Trial Docket Call" three times before October 2001and that Smith was given at least ten days' notice that his case was set for trial on October 1.  (Clerk's R. at 5.)  Thus,

he had adequate notice to prepare a defense.

### 7.  Lack of Evidence to Support the Conviction

Smith complains that there is no proof of aggravating circumstances in his case because there is no evidence that he used the car, his hands, or his feet as a deadly weapon, that Bryant suffered serious bodily injury, or that Bryant's injuries were the result of his criminal acts or his negligence. (Petition at 7a; Pet'r Memorandum at 16.)  A state prisoner's no-evidence claim is treated the same as a claim of insufficiency of the evidence and is governed by *Jackson v. Virginia.*  443 U.S. at 319. *See also Haley v. Cockrell*, 306 F.3d 257, 266-67 (5th Cir. 2002); *Gibson v. Collins*, 947 F.2d 780, 782 (5th Cir. 1991).  As noted earlier, Smith's own statement in conjunction with the other evidence presented at trial was sufficient to establish beyond a reasonable doubt the aggravating elements of the offense.  Smith's no-evidence claim misrepresents the record and is frivolous.

### 8.  Denial of Court Records

Smith complains that he was denied free copies of his state court records upon numerous requests for purposes of pursuing state post-conviction habeas relief.  (Pet'r Memorandum at 18; Pet'r Answer at 10.)  Although Smith asserts that he attempted to obtain the state court records, he has not supported this assertion with copies of any letters or pleadings demonstrating his efforts to obtain the state court records.   Thus, his contention is wholly conclusory with no substantiation in the record.  *See Ross*, 694 F.2d at 1011-12.  Furthermore, a habeas petitioner has no constitutional right to a free copy of trial court records or transcripts for the purpose of preparing a collateral attack on his conviction merely because he is indigent.  *See Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975).  Similarly, under state law, an indigent defendant is not entitled to a free copy of the trial record for use in pursuing postconviction habeas corpus relief absent a showing that the habeas

corpus action is not frivolous and there is a specific need for the trial records which are sought. *See In re Trevino*, 79 S.W.3d 794 (Tex. App.–Corpus Christi 2002, orig. proceeding); *In re Coronado*, 980 S.W.2d 691, 693 (Tex. App.– San Antonio 1998); *Eubanks v. Mullin*, 909 S.W.2d 574, 576 (Tex. App.–Fort Worth 1995, orig. proceeding); *Escobar v. State*, 880 S.W.2d 782, 783 (Tex. App.–Houston [1st Dist.] 1993, no pet.) (order).  The state habeas court concluded that Smith had not made such a showing.  (State Habeas R. at 21.)  Smith has presented nothing to rebut the state courts' determination.

### 9.  Evidentiary Hearing

Smith requests an evidentiary hearing for purposes of further developing the record and providing record references in support of his claims.  28 U.S.C. § 2254(e)(2).  Smith seeks a hearing on the basis that he was unable to fully develop the record without a copy of the trial court records and to present testimony from Haley and other evidence in support of his ineffective-assistance claims.  (Pet'r Memorandum at 1; Pet'r Answer at 3.)

28 U.S.C. § 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> > (A)  the claim relies on–
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Smith has not met the statutory criteria.  The case can be decided on the record, and the interests of justice do not require a hearing.  The state court's factual findings are fairly supported by the record.  Smith has not demonstrated why he failed to obtain and file an affidavit by Haley, along with the other evidence he now wishes to present, in his state habeas proceeding.  Additionally, notwithstanding Smith's failure to cite to record references, the undersigned has attempted to locate those portions of the record relevant to his claims.  Further development of the record is not necessary in order to assess the claims.

### 10.  Conclusion

The state courts' adjudication of the claims presented does not appear contrary to or involve an unreasonable application of federal law in light of the record as a whole and is entitled to deference and the presumption of correctness.

## II.  RECOMMENDATION

Smith's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions,

and recommendation until July 12, 2005.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(B)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until July 12, 2005, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 20, 2005.

   /s/ Charles Bleil              
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE